**The TOG SHOP, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 87–172–ALB–AMER (DF).**

United States District Court, M.D. Georgia, Albany–Americus Division.

Sept. 20, 1989.

---

William E. Smith, Americus, Ga., for plaintiff.

Curtis L. Bowman, Michael J. King, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

FITZPATRICK, District Judge.

Plaintiff brings this action for recovery of federal income taxes in the amount of $552,219.51 plus interest paid, alleged to have been erroneously and illegally assessed and collected by Defendant through its agents. The case was tried before the court sitting without a jury on February 3, 1989. The court heard final argument in the case on June 21, 1989. The court's findings of fact and conclusions of law are set out below.

## I. FINDINGS OF FACT

Plaintiff The Tog Shop, Inc. (Tog) is a mail order business located in Americus, Sumter County, Georgia. Tog sells primarily Spring and Fall season, fashion oriented "ladies wear" which is advertised and sold by mail order through catalogs the company mails out each Fall and Spring season. Tog purchases approximately ninety percent (90%) of its sales merchandise from outside suppliers and approximately ten percent (10%) of it from Tog's wholly owned subsidiary Sea Island Manufacturing Company. The purchases are made in advance of catalog sales based on prior records and years of experience in the business.

Despite its best predictions, Tog always wound up with excess merchandise not suitable for inclusion in the next season's catalog. Other than giving it away, Tog had two options for disposing of the excess merchandise from the previous season. Tog's first option was to sell the excess merchandise to "clothing jobbers" who generally offered to pay what amounted to approximately twenty (20) to thirty (30) percent of Tog's cost for the merchandise while the jobbers reserved the right to select only the best sizes, styles, and colors.

Tog's second option for disposal of its excess merchandise, which Tog chose, was to open up retail outlet stores. The items sent by Tog to the outlet stores were classified as discontinued goods and never again appeared in Tog's catalogs. Tog estimated that by the 1980–81 fiscal year they were sending over 100,000 items to their retail outlet stores. That excess merchandise was unsalable at normal prices because of shop wear or changes of style.

It is the value of the excess discontinued goods in dispute in this case. The Internal Revenue Commissioner valued Tog's excess inventory items at cost for the tax years ending July 31, 1980 and July 31, 1981. The method adopted by Tog to value its excess goods was "the lower of cost or market method." Under that method, during the years in question, Tog asserted that it valued its excess inventories at their "net

realizable value."[1] Tog did not obtain the replacement cost component of net realizable value by specifically comparing the cost and market value of each inventory item on an item-by-item basis. Instead, Tog determined inventory value by applying a percentage formula to the total inventory that was classified by age. Inventory items as a group were valued at either fifty percent (50%) of cost or twenty-five percent (25%) of cost in 1980 and valued at either forty-four percent (44%) or twenty percent (20%) of cost in 1981. Tog does not have records showing the original cost of items compared with the market value the item was given. Tog also does not have records of the actual sales prices or bona fide offers on the discounted goods themselves to enable a verification of the inventory, either before or after the inventory dates.

There is no disagreement that Tog's accounting methods conformed as closely as possible to the best accounting methods in the business. What is in dispute is whether Tog's inventory accounting method complies with the applicable regulations and thus clearly reflects income.

## II. CONCLUSIONS OF LAW

This court must decide whether the Tog Shop is entitled to a refund of the income taxes accessed and collected against Tog in the amount of $552,219.51 plus interest paid, for the fiscal years ending July 31, 1980 and July 31, 1981. The tax issues in this case concerning inventory accounting are governed by 26 U.S.C.A. §§ 446 and 471 of the Internal Revenue Code of 1954 and the regulations promulgated pursuant to these statutes.[2] The general rule for methods of tax accounting is that "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." 26 U.S.C.A. § 446(a) (West 1988). That general rule covering acceptable methods of accounting

further provides that if the taxpayer does not regularly employ a method of accounting which clearly reflects income, the computation of taxable income shall be made in a manner which, in the opinion of the Commissioner, does clearly reflect income. 26 U.S.C.A. § 446(b) (West 1988).

The general rule for inventories is found in Section 471 of the United States Code Annotated and reads as follows:

Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

26 U.S.C.A. § 471 (West 1988). In this case, in which the Plaintiff taxpayer employed the use of inventories to determine income, the question of whether the best accounting practice was used is not in dispute.[3] In fact, citing Treasury Regulation 1.471-2(b), which states that greater weight is to be given to consistency than to any particular method, Tog argues that its consistent use of an accounting method that conforms as closely as possible to the best accounting practice warrants a ruling in its favor. Consistency, however, is not the final determinant. "Section 1.446-1(a)(2) of the [Treasury] Regulations states categorically that 'no method of accounting is acceptable unless, in the opinion of the Commissioner, Tog's accounting practice *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 541, 99 S.Ct. 773, 785, 58 L.Ed.2d 785 (1979). In the opinion of the Commissioner Tog's accounting practice does not clearly reflects income.

■ Deciding whether a taxpayer's accounting practice clearly reflects income is left up to the Commissioner who has been granted broad discretion to make such a

1. Net realizable value is replacement cost of the inventory item less the direct cost of disposing of that item.

2. The tax years at issue are before 1986 and thus controlled by the 1954 code. Subsequent cita-

tions to current law occurs only because significant changes in the law have not taken place.

3. The parties have stipulated that the accounting method used by Tog conformed as closely as possible to the best accounting practice.

determination. *Thor*, 439 U.S. at 532, 99 S.Ct. at 781. The Commissioner's disallowance of an inventory accounting method shall not be set aside unless shown to be plainly arbitrary, thus placing a heavy burden of proof on the taxpayer. *Thor*, 439 U.S. at 533–34, 99 S.Ct. at 781–82. In the case at bar, Tog must overcome that heavy burden placed on taxpayers and prove to this court that the Commissioner acted outside of his discretion in a plainly arbitrary manner. Only if the court finds that the Commissioner had no basis in law for finding that Tog's method did not clearly reflect income will this court rule that the actions of the Commissioner were plainly arbitrary.

Whether or not Tog's inventory accounting method clearly reflects income requires an analysis of the inventory accounting method used by Tog and a determination as to whether it was proper for Tog to employ that method. The method Tog contends it can and did properly use is the "lower of cost or market" method for valuing its inventory. That method of inventory accounting is governed by Treasury Regulations §§ 1.471–1 through 1.471–4.

The Supreme Court in *Thor* summarized the inventory accounting regulations applicable to this case as follows:

> The taxpayer must value inventory for tax purposes at cost unless the "market" is lower. "Market" is defined as "replacement cost," and the taxpayer is permitted to depart from replacement cost only in specified situations. When it makes any such departure, the taxpayer must substantiate its lower inventory valuation by providing evidence of actual offerings, actual sales, or actual contract cancellations. In the absence of objective evidence of this kind, a taxpayer's assertions as to the "market value" of its inventory are not cognizable in computing its income tax.

*Thor*, 439 U.S. at 536, 99 S.Ct. at 783.

Using the lower of cost or market method, Tog concluded that the market value or replacement cost of its 1980 and 1981 tax year inventories were lower than cost. Furthermore, in each of those years Tog departed from the replacement cost.[4] The Supreme Court's interpretation of the regulatory scheme pertinent to this case mandates that in order for Tog to utilize the inventory accounting method they employed, Tog must present objective evidence of the type indicated above, demonstrating that it qualifies for one of the exceptions that allows departure from replacement cost.

There are only two situations specified in the Regulations which allow a taxpayer to depart from replacement cost. The first such situation is noted in Section 1.471–4(b) of the Treasury Regulations which provides that;

> [w]here the taxpayer in the regular course of business has offered for sale such merchandise at prices lower than the current price ..., the inventory may be valued at such prices less direct cost of disposition, and the correctness of such prices will be determined by reference to the actual sales of the taxpayer for a reasonable period before and after the date of the inventory. Prices which vary materially from the actual prices so ascertained will not be accepted as reflecting the market.

26 C.F.R. § 1.471–4(b) (1988).

Tog argues that it has in fact complied with the requirements of the first exception as dictated by Treasury Regulation § 1.471–4(b). Tog asserts that the sales of excess merchandise from its retail outlet stores were actual sales used by Tog to determine the value of its inventory a reasonable period before and after the date of the inventory. The government concedes that if Tog could produce objective evidence that establishes the bid price and demonstrates that such bid price was used in the valuation of its inventory, Tog's inventory accounting method would be in compliance with Treasury Regulation § 1.471–4. Tog, however, failed to produce objective evidence that details a comparison

---

**4.** Tog used net realizable value which is replacement cost less direct cost of disposition.

of the market value of each article with the cost of the article as required by the applicable regulations.[5] No sale receipts, invoices, or hang tags [6] were presented as evidence of the actual sales prices of the inventory items. Furthermore, Tog admits that, using information obtained from the hang tags and years of experience, it created a *summarized* record of the cost of various *classes* of goods. Instead of comparing the cost of each item, which was represented by its hang tag, with a market value assigned that particular item, Tog summarized the cost of various articles and assigned a market value based on that summary.[7] Such a method is not in accord with the regulations governing market valuation under the lower of cost or market accounting method.[8] Tog defends its method of complying with 1.471–4(b) by stating that expecting Tog to provide separate figures for each of the 100,000 items of inventory is arbitrary and would encourage any company similarly situated to throw up its hands and write everything off.[9] The response to that argument is that if Tog wanted an additional tax break by taking advantage of the 1.471–4(b) exception, the Commissioner certainly has the right to require Tog to strictly adhere to all the provisions that must be complied with in order to qualify for the below market valuation allowed by 1.471–4(b).

The second situation allowing a taxpayer to value inventory below replacement cost occurs when the inventory item itself is defective. The taxpayer may value goods "at bona fide selling prices less cost of disposition" if the inventory items are "unsalable at normal prices or unusable in the normal way because of damage, imperfections, shop wear, changes of style, odd or broken lots, or other similar causes."[10] Treas. Reg. § 1.471–2(c), 26 C.F.R. 1.471–2(c)(1988). "The burden of proof will rest upon the taxpayer to show that such exceptional goods as are valued upon such selling basis come within the classifications indicated above, and he shall maintain such records of the disposition of the goods as will enable a verification of the inventory made." *Id.* "The Regulations [§ 1.471–2] demand that records of actual dispositions be kept." *Thor*, 439 U.S. at 537, 99 S.Ct. at 784.

Tog argued that the fact that it offered all its excess inventory for sale annually at a cost of thirty-five percent (35%) off the retail price demonstrated that the inventory items were valued at bona fide selling price. Tog did not, however, produce records of the disposition of the inventory items so as to enable verification of the actual sale prices of the individual inventory items. Tog provided figures that show total cost summaries of all the items sold.

5. Treasury Regulation 1.471–4(c) states, "[w]here the inventory is valued upon the basis of cost or market, whichever is lower, the market value of each article on hand at the inventory date shall be compared with the cost of the article, and the lower of such values shall be taken as the inventory value of the article."

6. Hang tags are tags that are put on each item sent to a retail outlet store. Hang tags show the original sales price of the item and any subsequent mark down prices.

7. Tog valued excess inventory items at either fifty percent (50%) of cost or twenty-five percent (25%) of cost in 1980 and valued excess inventory at either forty-four percent (44%) of cost or twenty percent (20%) of cost in 1981 based on the age of the inventory; not on an individual assessment of each inventory item's market value.

8. See note 5 *supra.*

9. In order to comply with the regulations, Tog would not have had to keep separate figures for each and every inventory item. The government stated that it would have accepted an invoice showing the amount the goods sold for within thirty days of the inventory date along with a second invoice showing the purchase amount of the goods. The government also indicated that rather than keeping separate figures for each and every item, the necessary recorded figures on one particular type of article could have been used to represent the cost and market comparison figures for all other articles of that same type. The problem with the records Tog produced at trial was that the government was unable to tell from those records which articles actually sold above cost and which articles sold below cost.

10. The court finds that Tog's excess inventory was unsalable at normal prices and unsalable in the normal way because of changes of style.

Those figures, however, do not enable the government to determine the bona fide selling price of various inventory items and how that price would compare with the actual market value Tog placed on the items.

The Tog Shop in the case at bar has not overcome its heavy burden of demonstrating that the Commissioner's disallowance of its inventory valuation was an abuse of the Commissioner's broad discretionary powers. The court is impressed by Tog's assertion that the method it used correctly determined the value of its inventory, demonstrated by the fact that even after two separate tax audits the government year after year tacitly approved of Tog's inventory accounting method. This court, however, must heed the Supreme Court's finding that "[i]n light of the well known potential for tax avoidance that is inherent in inventory accounting, the Commissioner in his discretion may insist on a high evidentiary standard before allowing write downs of inventory to market." *Thor*, 439 U.S. at 539, 99 S.Ct. at 784. In order to use the inventory accounting method Tog chose, it had to both make a comparison between cost and market value and retain objective evidence that would allow it to demonstrate that the comparison was in fact accurately and properly accomplished. The facts indicate that Tog did not value its inventory by making detailed comparisons between the cost of inventory items and their corresponding market value. Tog instead valued its excess inventory based on age, history, record summaries, and business experience. Furthermore, based partly on its manner of valuation, Tog simply was unable to produce the objective evidence required by the regulations. Accordingly, the Commissioner had a valid basis in the law for disallowing Tog's income tax refund request.

As to Tog's two alternative causes of action, the court rules in favor of the Defendant, finding that the Commissioner did restate Tog's beginning inventories in the proper amount.

For the foregoing reasons, the court finds for the Defendant on all counts of Plaintiff's Complaint.

SO ORDERED.